CASE NO.:  5:24-cv-1508

# EXHIBIT A

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
06/20/2024
CT Log Number 546701846

## Service of Process Transmittal Summary

**TO:**    Elizabeth Campbell, Associate General Counsel
Cencora, Inc.
1 W 1ST AVE
CONSHOHOCKEN, PA 19428-1800

**RE:**    **Process Served in California**

**FOR:**    Cencora, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: MARGIE LOPEZ, on behalf of herself and all others similarly situated // To: Cencora, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Certificate(s), Notice(s) |
| **COURT/AGENCY:** | Riverside County - Superior Court, CA<br>Case # CVRI2403162 |
| **NATURE OF ACTION:** | Medical Injury - Improper Care and Treatment |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/20/2024 at 13:04 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S)/SENDER(S):** | Mark D. Potter<br>Potter Handy LLP<br>100 Pine St., Ste 1250<br>San Francisco, CA 94111<br>415-534-1911 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/21/2024, Expected Purge Date: 06/26/2024 |
| | Image SOP |
| | Email Notification,  Elizabeth Campbell  elizabeth.campbell@cencora.com |
| | Email Notification,  Katherine (Kat) Tamulonis  Ktamulonis@amerisourcebergen.com |
| | Email Notification,  Michele F. Conte  michele.conte@cencora.com |
| | Email Notification,  Patricia Pellegrini  patricia.pellegrini@cencora.com |
| | Email Notification,  Christopher Casalenuovo  CCasalenuovo@amerisourcebergen.com |
| | Email Notification,  Carolyn Ellis  carolyn.ellis@cencora.com |
| | Email Notification,  Jennifer Healey  jennifer.healey@cencora.com |
| | Email Notification,  Shawn Matteo  shawn.matteo@cencora.com |



Email Notification,  Christopher Rider  christopher.rider@amerisourcebergen.com

Email Notification,  Awah Erickson  awah.erickson@cencora.com

Email Notification,  Theresa Langschultz  theresa.langschultz@cencora.com

Email Notification,  Melissa Rand  melissa.rand@cencora.com

Email Notification,  Melissa Martinez  melissa.martinez2@cencora.com

**REGISTERED AGENT CONTACT:**    C T Corporation System
330 N BRAND BLVD
STE 700
GLENDALE, CA 91203
877-564-7529
MajorAccountTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                        Thu, Jun 20, 2024
**Server Name:**                 Robert Diaz

| Entity Served | CENCORA, INC. |
|---|---|
| Case Number | CVRI2403162 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



Electronically FILED by Superior Court of California, County of Riverside on 06/06/2024 10:51 PM
Case Number CVRI2403162 0000095406561 - Jason B. Galkin, Executive Officer/Clerk of the Court By Brian Votruba, Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
   CENCORA, INC., a Delaware corporation; and DOES 1 through 100,
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
   MARGIE LOPEZ, on behalf of herself and all others similarly
situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):*<br>CVRI2403162 |
|---|---|
| Riverside County Superior Court<br><br>Riverside Historic Courthouse, 4050 Main Street, Riverside, CA 92501 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
  James M. Treglio; Potter Handy, LLP; 100 Pine St., Ste 1250, San Francisco, CA 94111; (415) 534-1911

| DATE: 6/6/2024<br>*(Fecha)* | Clerk, by<br>*(Secretario)* _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*   CENCORA, INC.

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

GC68150(g)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Electronically FILED by Superior Court of California, County of Riverside on 06/06/2024 10:51 PM
Case Number CVRI2403162 0000095406558 - Jason B. Galkin, Executive Officer/Clerk of the Court By Brian Votruba, Clerk

1
**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)

2
mark@potterhandy.com
James M. Treglio (SBN 228077)

3
jimt@potterhandy.com
100 Pine St., Ste 1250

4
San Francisco, CA 94111
Tel: (415) 534-1911

5
Fax: (888) 422-5191

6

7
Attorneys for Plaintiff

8
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9
**FOR THE COUNTY OF RIVERSIDE**

10
MARGIE LOPEZ, on behalf of herself and all
others similarly situated,

11

12
                Plaintiff,

13
        vs.

14
CENCORA, INC., a Delaware corporation; and

15
DOES 1 through 100, inclusive,

16
                Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

| )  | **Case No.**   CVRI 2403162 |
|---|---|
| )  | **CLASS ACTION** |
| )  | **CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (FOR VIOLATIONS OF:** |
| )  | (1) **THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ.*);** |
| )  | (2) **CALIFORNIA CONSUMER PRIVACY ACT § 1798.150; and** |
| )  | (3) **CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*** |
| )  | **DEMAND FOR JURY TRIAL** |

Class Representative Margie Lopez ("Class Representative" or "Plaintiff"), by and through her attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

## I.

## INTRODUCTION

1.      Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff and all other persons similarly situated, had a right to keep their personal medical information provided to Defendants Cencora, Inc. ("Cencora" or "Defendants") confidential.  The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved.  It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36." Civil Code § 56.101(a).

2.      Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendants for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information

1

1  or records concerning him or her in violation of this part, for either or both of the following: (1) ...

2  nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, *it shall*

3  *not be necessary that the plaintiff suffered or was threatened with actual damages.* (2) The amount

4  of actual damages, if any, sustained by the patient."  (Emphasis added.)

5      3.      This class action is brought on behalf of Plaintiff and a putative class defined as all

6  citizens of the State of California who provided their personal medical information to Defendants

7  and/or their partner health plans  on or before June 30, 2022, and who received notices from

8  Defendants that their information was compromised ("Breach Victims," the "Class," or the "Class

9  Members").

10     4.      As alleged more fully below, Defendants created, maintained, preserved, and stored

11 Plaintiff's and the Class members' personal medical information onto the Defendant's computer

12 network prior to February 21, 2024.  Due to Defendant's mishandling of personal medical

13 information recorded onto the Defendants' computer network, there was an unauthorized release of

14 Plaintiff's and the Class members' confidential medical information that occurred on or about

15 February 21, 2024, in violation of Civil Code § 56.101 of the Act.

16     5.      As alleged more fully below, Defendants negligently created, maintained, preserved,

17 and stored Plaintiff's and the Class members' confidential medical information in a non-encrypted

18 format onto a data server which became accessible to an unauthorized person, without Plaintiff's

19 and the Class members' prior written authorization. This act of providing unauthorized access to

20 Plaintiff's and the Class Members' confidential medical information onto the internet continuously

21 constitutes an unauthorized release of confidential medical information in violation of Civil Code §

22 56.101 of the Act.  Because Civil Code § 56.101 allows for the remedies and penalties provided

23 under Civil Code § 56.36(b), Class Representative, individually and on behalf of others similarly

24 situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil

25 Code § 56.36(b)(1).

26     6.      The PII disclosed in the Data Breach is also protected by the California Consumer

27 Privacy Act of 2018 ("CCPA"). For purposes of CCPA Section 1798.150, "personal information"

28 is defined as an individual's first name or first initial and his or her last name in combination with

2

any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted: (1) social security number; (2) driver's license number or California ID card number; (3) account number or credit or debit card number, in combination with any required security code, access code or password that would permit access to an individual's financial account; (4) medical information; and/or (5) health insurance information.[1]

7.     Here, unencrypted names were revealed along with account information that would permit access to individuals' financial and other accounts across the web. According to Defendants' notice to affected customers dated May 17, 2024, the PII subjected to unauthorized access and exfiltration, theft, or disclosure in the Data Breach includes (among other things): "first name, last name, address, date of birth, health diagnosis, and/or medications and prescriptions." In combination, those pieces of PII could permit access to other accounts using similar or the same information, including financial accounts.

8.     When nonencrypted and nonredacted personal information defined in Section 1798.150 is subjected to unauthorized access and exfiltration, theft, or disclosure by a company that has failed to maintain reasonable security measures, the CCPA explicitly authorizes private litigants to bring individual or class action claims.[2]

9.     Defendants have failed to maintain reasonable security controls and systems appropriate for the nature of the PII it maintains as required by the CCPA and other common and statutory laws. According to one blogger for the International Association for Privacy Professionals, "encryption is a security strategy …[that] protects your organization from scenarios like a devastating breach where, if the adversary were to gain access to your servers, the data stored would be of no use to them, unless they have the encryption key. It's an all-or-nothing security posture: You either get to see the data unencrypted, or you don't."[3] "[O]rganizations should encrypt their

---

[1] In other sections of the CCPA, "personal information" is defined more broadly as "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household."

[2] CCPA Section 1798.192 also states: "Any provision of a contract or agreement of any kind that purports to waive or limit in any way a consumer's rights under this title, including, but not limited to, any right to a remedy or means of enforcement, shall be deemed contrary to public policy and shall be void and unenforceable."

[3] Tuow, Steve, Encryption, redaction and the CCPA, available at https://iapp.org/news/a/encryption-redaction-and-the-ccpa/ (last accessed July 14, 2022).

3

Class Action Complaint

1  data on a disk as a required security measure. But they must not stop there. In fact, the CCPA is
2  clear that they should go further." *Id.*

3      10.   Defendants also failed to maintain proper measures to detect hacking and intrusion.
4  According to its notice to affected customers, "On February 21, 2024, Cencora learned that data
5  from its information systems had been exfiltrated..." However, it was only "On April 10, 2024, we
6  confirmed that some of your personal information was affected by the incident." As explained
7  below, Defendants should have had breach detection protocols in place. If they had, they could have
8  learned of the breach and alerted customers much sooner and not almost three months after they
9  discovered the Data Breach.

10     11.   Nearly all "best practices" security frameworks, e.g., the U.S. National Institute of
11  Standards and Technology's (NIST) Special Publication 800, require log aggregation, log
12  monitoring, and automated intrusion detection systems that alert a company of unauthorized access
13  or the anomalous use of hacked user accounts. Had Defendants properly deployed those industry
14  standard systems, the breach might not have occurred or, if it had, Defendants would have promptly
15  detected it.

16     12.   Because (i) Defendants have failed to maintain reasonable security measures, and (ii)
17  Defendants disclosed their customers' unencrypted names and birth dates, among others, the CCPA
18  explicitly permits an individual or class action under Section 1798.150 for this Data Breach.

19     13.   Defendants claim that "we are also working with cybersecurity experts to reinforce
20  our systems and information security protocols in an effort to avoid incidents like this from
21  occurring in the future." But the viewing, theft, and attempted sale of California consumers' PII on
22  the dark web has already occurred and cannot be cured.

23     14.   Defendants disregarded Plaintiff's and Class members' privacy rights in the PII by,
24  among other things, (i) failing to implement reasonable security safeguards to prevent or timely
25  detect the Data Breach; (ii) failing to detect the Data Breach when or after it occurred; (iii) failing
26  to disclose to customers that it did not implement such reasonable security safeguards; and (iv)
27  failing to provide sufficiently prompt, thorough, and accurate notice and information about the Data
28  Breach.

4

15.     As a result of the Data Breach, Plaintiff and the Classes have been injured in several ways. Plaintiff and Class members (i) now know or should know that their PII was hacked and put up for sale on the dark web for purchase by malicious actors; (ii) face an imminent and ongoing risk of identity theft and similar cybercrimes; (iii) have expended and will continue to expend time and money to protect against cybercrimes; (iv) have lost value in their PII; and (v) did not receive the benefit of their bargain with Defendant regarding data privacy.

16.     Plaintiff and Class members are therefore (i) entitled to actual and statutory damages under the CCPA and other laws, (ii) have incurred actual and concrete damages as a result of the unauthorized sale of their PII to malicious actors on the dark web, and (iii) face ongoing risks of disclosure of their PII in subsequent data breaches because Defendants have not demonstrated that they have implemented reasonable security systems and procedures. Plaintiff and Class members have a significant interest in the protection and safe storage of their PII. They are therefore entitled to declaratory, injunctive, and other equitable relief necessary to protect their PII. This includes, but is not limited to, an order compelling Defendants to adopt reasonable security procedures and practices to safeguard customers' PII and prevent future data breaches.

17.     Class Representative does not seek any relief greater than or different from the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons.  Private enforcement is necessary and places a disproportionate financial burden on Class Representative's stake in the matter.

**II.**

**JURISDICTION AND VENUE**

18.     This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10.  The aggregated amount of damages incurred by Plaintiff and the Class exceeds the $25,000 jurisdictional minimum of this Court.  The amount in controversy as to the Plaintiff individually and each individual Class member does not exceed $75,000, including interest and any pro rata award of attorneys' fees, costs, and damages.  Venue is proper in this Court under California Code of Civil Procedure §§ 395(a) and 395.5 because Defendants do business in the State of

5

1  California and in the County of Riverside.  Defendants have obtained medical information in the

2  transaction of business in the County of Riverside which has caused both obligations and liability

3  of Defendants to arise in the County of Riverside.

4  ## III.

5  ## PARTIES

6  **A.   PLAINTIFF**

7       19.     Class Representative Margie Lopez is a resident of the State of California.  At all

8  times relevant, Plaintiff was registered with one of Defendants' partner companies, which

9  Defendants helped facilitate access to therapies through drug distribution, patient support services,

10 business analytics and technology, and other services.  The information provided by Plaintiff to

11 Defendants through Defendants' partner health plans included Plaintiff's medical information.

12 Thus, Plaintiff was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable

13 medical information derived by Defendants in electronic form was in possession of Defendants,

14 including but not limited to Plaintiff's medical history, mental or physical condition, or treatment,

15 including diagnosis and treatment dates.  Such medical information included or contained an

16 element of personal identifying information sufficient to allow identification of the individual, such

17 as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic

18 mail address, telephone number, or social security number, or other information that, alone or in

19 combination with other publicly available information, reveals Plaintiff's identity. Since Defendants

20 obtained Plaintiff's information, Plaintiff has received numerous solicitations by mail from third

21 parties at an address she only provided to Defendants through their partner companies. Plaintiff has

22 also received numerous alerts from her credit monitoring company that her email and password are

23 now found on the dark web. Plaintiff began receiving these alerts on or about March 12, 2024 and

24 she continues to receive them to date.

25       20.     PLAINTIFF received from Defendants a notification that her personal medical

26 information and personal identifying information were disclosed when an unauthorized person

27 gained access to Defendants' servers.

28

6

Class Action Complaint

**B.      DEFENDANT**

21.Defendant Cencora, Inc. partners with pharmaceutical companies, pharmacies, and healthcare providers to facilitate access to therapies through drug distribution, patient support services, business analytics and technology, and other services. It is a Delaware corporation with its principal place of business located at 1 West First Avenue, Conshohocken, PA 19428. Defendants operate throughout the State of California including in Riverside, California. At all times relevant, Defendant is a "provider of health care" as defined by Civil Code § 56.05(m), or a contractor as defined by Civil Code §56.05(d).  Prior to February 21, 2024, Defendants created, maintained, preserved, and stored Plaintiff's and the Class members' individually identifiable medical information onto Defendants' computer network, including but not limited to Plaintiff's and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's and the Class members' identities.

**C.      DOE DEFENDANTS**

22.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known.  Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

7

**D.     AGENCY/AIDING AND ABETTING**

23.     At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

24.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**IV.**

**FACTUAL ALLEGATIONS**

**A.     The Data Breach**

25.     Defendants partner with pharmaceutical companies, pharmacies, and healthcare providers to facilitate access to therapies through drug distribution, patient support services, business analytics and technology, and other services. Defendants gather information in order to provide these services. With data stored regarding patients nationwide, Defendants collect a significant amount of sensitive data from patients, as delineated above.

26.     In order to perform these functions, Defendants regularly collect information from their partner companies, including personally identifiable information and medical information, including the diagnosis and treatment plans. To that end, Defendants operate as either a contractor performing administrative functions, as described in Civil Code §§56.10 (d), 56.26, or a medical provider under Civil Code §56.05(m). Defendants are also considered a "recipient" of medical information as defined by Civil Code §56.13.

8

27.     Whether deemed as a medical provider, contractor, administrator, or recipient, Defendants, who had access to mental health records (defined as "sensitive services" under Civil Code §56.05(n)), had an affirmative duty under Civil Code §§56.10 and 56.101 to not disclose the confidential medical record to anyone without proper authorization.

28.     On or around May 17, 2024, Defendants issued a letter (the "Notice") to individuals, including Plaintiff, providing, for the first time, a notice of "an event that involved your personal information that Lash Group has through the patient support and access programs it manages on behalf of Bristol Myers Squibb and/or Bristol Myers Squibb Patient Assistance Foundation."

29.     In the Notice, Defendants states that "On February 21, 2024, Cencora learned that data from its information systems had been exfiltrated, some of which could contain personal information. Upon initial detection of the unauthorized activity, Cencora immediately took containment steps and commenced an investigation with the assistance of law enforcement, cybersecurity experts and outside lawyers. On April 10, 2024, we confirmed that some of your personal information was affected by the incident." (the "Data Breach").

30.     The Notice went on to say that "Based on our investigation, personal information was affected, including potentially your first name, last name, address, date of birth, health diagnosis, and/or medications and prescriptions." Defendants confirmed that some of Plaintiff's information were present in the files that were illegally accessed from Defendants' server. Defendants failed to state in their Notice when they identified that Plaintiff's information was included in the Data Breach. By definition, the information the Notice states was affected by the breach included confidential medical information regarding "sensitive services." as defined by Civil Code §56.05(i) and (n).

31.     Beginning on or about March 12, 2024, Plaintiff began receiving notifications from her credit monitoring provider informing her that her email and password have been found on the dark web. To date, Plaintiff continues to receive such alerts.

32.     Yet, despite knowing many patients were in danger, Defendants did nothing to warn Breach Victims until almost three months after they discovered the Data Breach and after the actual date of the Data Breach, an unreasonable amount of time under any objective standard. During this

9

1 time, cyber criminals had free reign to surveil and defraud their unsuspecting victims. Defendants
2 apparently chose to complete their internal investigation and develop their excuses and speaking
3 points before giving class members the information they needed to protect themselves against fraud
4 and identity theft.

5     33.     This was a staggering coup for cyber criminals and a stunningly bad showing for
6 Defendants. And if those affected included minors, this data breach will likely affect them for their
7 entire lives.

8     34.     It is apparent from Defendants' Notice that the Personal and Medical information
9 contained within the server was not encrypted or was inadequately protected.

10     35.     In spite of the severity of the Data Breach, Defendants have done very little to protect
11 Breach Victims. In the Notice, Defendants state that it is notifying Breach Victims and they
12 encourage the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to
13 review their account statements and explanation of benefits forms, and to monitor their free credit
14 reports for suspicious activity, and to detect errors. In effect, shirking their responsibility for the
15 harm they caused and putting them all on the Breach Victims.

16     36.     Defendants failed to adequately safeguard Plaintiff's and Class members' Personal
17 and Medical Information, allowing cyber criminals to access this wealth of priceless information
18 and use it for almost three months before Defendants warned the criminals' victims, the Breach
19 Victims, to be on the lookout.

20     37.     Defendants failed to spend sufficient resources on monitoring external incoming
21 emails and training their employees to identify email-born threats and defend against them.

22     38.     Defendants had obligations created by the Health Insurance Portability and
23 Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"),
24 reasonable industry standards, their own contracts with their patients and employees, common law,
25 and their representations to Plaintiff and Class members, to keep their Personal and Medical
26 Information confidential and to protect the information from unauthorized access.

27     39.     Plaintiff and Class members provided their Personal and Medical Information to
28 Defendants with the reasonable expectation and mutual understanding that Defendants would

Class Action Complaint

1   comply with their obligations to keep such information confidential and secure from unauthorized

2   access.

3       40.     Indeed, as discussed below, Defendants promised Plaintiff and Class members that

4   they would do just that.

5   **B.    Defendants Expressly Promised to Protect Personal and Medical Information**

6       41.     Defendants provide all clients, including Plaintiff and Class members, their Privacy

7   Statement, which states that:

> Security of Your Personal Data
>
> We use appropriate technical, administrative and physical safeguards to protect
> Personal Data from loss, misuse or alteration. We limit access to Personal Data to
> those employees, agents, contractors and other third parties who have a business need
> to know...[4]

12      42.     Likewise, Defendants' State Supplement to Privacy Statement, which applies to

14  individuals who reside in the State of California states that:

> Information We Collect, Disclose, or Sell
>
> Cencora has not sold or shared (as those terms are defined under applicable laws) Personal
> Data, including Sensitive Personal Data, to any third party in the last twelve (12) months.
> Where Cencora discloses Personal Data to third parties, it does so for the same business
> purposes described below and, where appropriate, requires that such parties maintain its
> confidentiality and maintain appropriate systems and processes to ensure its security and
> protection. ...
>
> Cencora does not "sell" or "share" (within the meaning of the State Privacy Laws) Personal
> Data about you to third parties. Relatedly, we do not sell or share Personal Data of
> individuals under 16 years of age. Cencora does not use or disclose sensitive Personal Data,
> as defined in applicable laws, for any purposes other than those permitted by applicable law.
>
> Cencora does not use or disclose sensitive Personal Data for any purposes other than those
> permitted by applicable law.[5]

23      43.     Notwithstanding the foregoing assurances and promises, Defendants failed to protect

25  the Personal and Medical Information of Plaintiff and other Class members from cyber criminals

---

[4] Cencora, "Privacy Statement," https://www.cencora.com/global-privacy-statement, last visited on June 6, 2024.

[5] Cencora, "State Supplement to Privacy Statement," https://www.cencora.com/global-california-supplement, last visited on June 6, 2024.

Class Action Complaint

1   using relatively unsophisticated means to dupe their patients, as conceded in the Notice to the Breach

2   Victims.

3         44.      If Defendants truly understood the importance of safeguarding patients' Personal and

4   Medical Information, they would acknowledge their responsibility for the harm they caused, and

5   would compensate class members, provide long-term protection for Plaintiff and the Class, agree to

6   Court-ordered and enforceable changes to their cybersecurity policies and procedures, and adopt

7   regular and intensive training to ensure that a data breach like this never happens again.

8         45.      Defendants' data security obligations were particularly important given the known

9   substantial increase in data breaches, including the recent massive data breach involving PostMeds,

10  Tri City Medical, Kaiser Foundation Health Plan, Independent Living System, United Health

11  Centers of the San Joaquin Valley, PracticeMax, Lincare, Illuminate Education, Horizon Actuarial

12  Services, Partnership HealthPlan of California, Bako Diagnostics, Rite Aid, Discovery Practice

13  Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics,

14  and American Medical Collections Agency. And given the wide publicity given to these data

15  breaches, there is no excuse for Defendants' failure to adequately protect Plaintiff and Class

16  members' Personal and Medical Information.

17        46.      That information, is now in the hands of cyber criminals who will use it if given the

18  chance. Much of this information is unchangeable and loss of control of this information is

19  remarkably dangerous to consumers.

20  **C.     Defendants had an Obligation to Protect Personal and Medical Information under**

21  **Federal and State Law and the Applicable Standard of Care**

22        47.      Defendant requires its customers to provide PII "for business and compliance

23  reasons." It collects, retains, and uses that data to maximize profits through predictive marketing

24  and other targeted marketing practices. By collecting, using, and deriving significant benefit from

25  customers' PII, Defendant had a legal duty to take reasonable steps to protect this information from

26  disclosure. As discussed below, Defendants also had a legal duty to take reasonable steps to protect

27  customers' PII under applicable federal and state statutes, including Section 5 of the Federal Trade

28

12

Commission Act ("FTC Act"), 15 U.S.C. § 45, and the California Consumer Protection Act of 2018 (the "CCPA"), Cal. Civ. Code § 1798, et seq. FTC Security Guidelines Concerning PII.

48.    Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and   Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

49.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

50.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

51.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

52.    "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

53.    HIPAA's Security Rule requires Defendants to do the following:

    a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d. Ensure compliance by its workforce.

13

54.     HIPAA also required Defendants to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

55.     HIPAA also required Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

56.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendants to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[6]

57.     The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches. Defendants were prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

58.     Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

59.     In 2016, the FTC provided updated security guidelines in a publication titled Protecting Personal Information: A Guide for Business. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay

---

[6] Breach Notification Rule, U.S. Dep't of Health &   Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

1   particular attention to the security of web applications – the software used to inform visitors to a
2   company's website and to retrieve information from the visitors.

3       60.     The FTC recommends that businesses do not maintain payment card information
4   beyond the time needed to process a transaction; restrict employee access to sensitive customer
5   information; require strong passwords be used by employees with access to sensitive customer
6   information; apply security measures that have proven successful in the particular industry; and
7   verify that third parties with access to sensitive information use reasonable security measures.

8       61.     The FTC also recommends that companies use an intrusion detection system to
9   immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a
10  hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from
11  the system; and develop a plan to respond effectively to a data breach in the event one occurs.

12      62.     The FTC has brought several actions to enforce Section 5 of the FTC Act. According
13  to its website:

14          When companies tell consumers they will safeguard their personal information, the
15          FTC can and does take law enforcement action to make sure that companies live up
            these promises. The FTC has brought legal actions against organizations that have
16          violated consumers' privacy rights, or misled them by failing to maintain security
            for sensitive consumer information, or caused substantial consumer injury. In many
17          of these cases, the FTC has charged the defendants with violating Section 5 of the
            FTC Act, which bars unfair and deceptive acts and practices in or affecting
18          commerce. In addition to the FTC Act, the agency also enforces other federal laws
19          relating to consumers' privacy and security.

20      63.     Defendant was aware or should have been aware of its obligations to protect its
21  customers' PII and privacy before and during the Data Breach yet failed to take reasonable steps to
22  protect customers from unauthorized access. Among other violations, Defendant violated its
23  obligations under Section 5 of the FTC Act.

24      64.     For example, the length of time it took Defendant to inform Plaintiff and the Class
25  about the Data Breach after Defendant discovered the incident indicates that it does not use an
26  adequate intrusion detection system to immediately expose a data breach; does not sufficiently
27  monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the
28  system; does not properly monitor for the transmission of large amounts of data from the system;

15

1   and does not maintain an appropriate plan to respond effectively to a data breach in the event one
2   occurs.

3       65.    As described before, Defendants are also required (by the California Consumer
4   Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff
5   and Class members' Personal and Medical Information, and further, to handle any breach of the
6   same in accordance with applicable breach notification statutes.

7       66.    In addition to their obligations under federal and state laws, Defendants owed a duty
8   to Breach Victims whose Personal and Medical Information was entrusted to Defendants to exercise
9   reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal
10  and Medical Information in its possession from being compromised, lost, stolen, accessed, and
11  misused by unauthorized persons. Defendants owed a duty to Breach Victims to provide
12  reasonable security, including consistency with industry standards and requirements, and to ensure
13  that their computer systems and networks, and the personnel responsible for them, adequately
14  protected the Personal and Medical Information of the Breach Victims.

15      67.    Defendants owed a duty to Breach Victims whose Personal and Medical Information
16  was entrusted to Defendants to design, maintain, and test their computer systems and email system
17  to ensure that the Personal and Medical Information in Defendants' possession was adequately
18  secured and protected.

19      68.    Defendants owed a duty to Breach Victims whose Personal and Medical Information
20  was entrusted to Defendants to create and implement reasonable data security practices and
21  procedures to protect the Personal and Medical Information in their possession, including
22  adequately training its employees and others who accessed Personal Information within its computer
23  systems on how to adequately protect Personal and Medical Information.

24      69.    Defendants owed a duty to Breach Victims whose Personal and Medical Information
25  was entrusted to Defendants to implement processes that would detect a breach on their data security
26  systems in a timely manner.

27      70.    Defendants owed a duty to Breach Victims whose Personal and Medical Information
28  was entrusted to Defendants to act upon data security warnings and alerts in a timely fashion.

16

71.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to adequately train and supervise their employees to identify and avoid any phishing emails that make it past their email filtering service.

72.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendants.

73.     Defendants owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendants to disclose in a timely and accurate manner when data breaches occurred.

74.     Defendants owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

**D.     A Data Breach like Defendants' Results in Debilitating Losses to Consumers**

75.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[7] Cyber criminals can leverage Plaintiff and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

---

[7] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info.   Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

76.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

77.     This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff's and the Class members' Personal and Medical Information from Defendants was to engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims. .

78.     This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[8]

79.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

80.     For instance, with a stolen social security number, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[10] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

81.     Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is

---

[8] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[9] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[10] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

18

Class Action Complaint

1  more "than identity thefts involving banking and finance, the government and the military, or
2  education."[11]

3      82.    "Medical identity theft is a growing and dangerous crime that leaves its victims with
4  little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum.
5  "Victims often experience financial repercussions and worse yet, they frequently discover erroneous
6  information has been added to their personal medical files due to the thief's activities."[12]

7      83.    As indicated by Jim Trainor, second in command at the FBI's cyber security division:
8  "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social
9  Security and insurance numbers, and even financial information all in one place. Credit cards can
10  be, say, five dollars or more where PHI can go from $20 say up to—we've seen $60 or $70
11  [(referring to prices on dark web marketplaces)]."[13] A complete identity theft kit that includes health
12  insurance credentials may be worth up to $1,000 on the black market.[14]

13      84.    If, moreover, the cyber criminals also manage to steal financial information,
14  credit and debit cards, health insurance information, driver's licenses and passports—as they did
15  here—there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

16      85.    A study by Experian found that the average total cost of medical identity theft is
17  "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to
18  pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[15] Almost
19  half of medical identity theft victims lose their healthcare coverage as a result of the incident, while

20

21

---

[11] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[12] *Id.*

[13] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows,* https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[14] *Managing cyber risks in an interconnected world,* PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

[15] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

Class Action Complaint

1    nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve

2    their identity theft at all.[16]

3        86.    As described above, identity theft victims must spend countless hours and large

4    amounts of money repairing the impact to their credit.[17]

5        87.    The danger of identity theft is compounded when a minor's Personal and Medical

6    Information is compromised because minors typically have no credit reports to monitor. Thus, it can

7    be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze"

8    their credit report when no credit report exists.

9        88.    Defendants' offer of 24 months of free identity monitoring to Plaintiff and the Class

10    is likewise insufficient. While some harm has begun already, the worst may be yet to come. There

11    may be a time lag between when harm occurs versus when it is discovered, and also between when

12    Personal and Medical Information is stolen and when it is used. In any case, identity monitoring

13    only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent

14    acquisition and use of another person's Personal and Medical Information)—it does not prevent

15    identity theft.[18] This is especially true for many kinds of medical identity theft, for which most credit

16    monitoring plans provide little or no monitoring or protection.

17        89.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been

18    placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity

19    theft.  Plaintiff and the Class must now take the time and effort to mitigate the actual and potential

20    impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with

21    credit reporting agencies, contacting their financial institutions, healthcare providers, closing or

22    modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports,

23    and health insurance account information for unauthorized activity for years to come.

24

25    [16] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN,
      https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-

26    after-one/.

      [17] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013),
27    http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

28    [18] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017,
      https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

Class Action Complaint

90.     Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

    b. Improper disclosure of their Personal and Medical Information;

    c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

    d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

    e. Damages flowing from Defendants' untimely and inadequate notification of the data breach;

    f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

    g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

    h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

    i.     The loss of use of and access to their credit, accounts, and/or funds;

    j.     Damage to their credit due to fraudulent use of their Personal and Medical Information; and

    k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

91.     Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards.

92. Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendants do nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

## V.

## **CLASS ACTION ALLEGATIONS**

93. Class Representative brings this action on her own behalf and on behalf of all other persons similarly situated. The putative class that Class Representative seeks to represent is composed of:

> All citizens of the State of California who provided their personal medical information to Defendants and/or their partner companies on or before February 21, 2024, and who received notices from Defendants that their information was compromised (hereinafter the "Class").

> Excluded from the Class are the natural persons who are directors, and officers, of the Defendants. Class Representative expressly disclaims that he is seeking a class-wide recovery for personal injuries attributable to Defendants' conduct.

94. Plaintiff is informed and believes that the total number of Class Members exceeds millions of persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Class Representative at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendants.

95. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative's claims are typical of the members of the class, and Class Representative can fairly and adequately represent the interests of the Class.

96. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) Whether Defendants failed to adequately safeguard Plaintiff's and the Class' Personal and Medical Information;

    (b) Whether Defendants failed to protect Plaintiff's and the Class' Personal and Medical Information;

22

(c)     Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCPA, UCL, and/or Defendant's other duties;

(d)     Whether Defendants violated the data security statutes and data breach notification statutes applicable to Plaintiff and the Class;

(e)     Whether Defendants failed to notify Plaintiff and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f)     Whether Defendants acted negligently in failing to safeguard Plaintiff's and the Class' Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(g)     Whether Defendants entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendants to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(h)     Whether Defendants violated the consumer protection statutes, data breach notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(i)     Whether Defendants failed to notify Plaintiff and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(j)     Whether Defendants' conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(k)     Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendants' wrongful conduct;

(l)     What equitable relief is appropriate to redress Defendants' wrongful conduct; and

(m)     What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

Class Representative's claims are typical of those of the other Class members because Class Representative, like every other Class member, was exposed to virtually identical conduct and are entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

97.     Class Representative will fairly and adequately protect the interests of the Class. Moreover, Class Representative has no interest that is contrary to or in conflict with those of the Class he seeks to represent during the Class Period.  In addition, Class Representative has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

98.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendants in the State of California and would lead to repetitious trials of the numerous common questions of fact and law in the State of California. Class Representative knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

99.     Proper and sufficient notice of this action may be provided to the Class members through direct mail.

100.     Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Class Representative and the members of the Class will continue to be damaged by the unauthorized release of their individual identifiable medical information.

## VI.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**
(Against All Defendants)

101.     Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

102.     Defendant is a "provider of health care," within the meaning of Civil Code §56.05(m), a "contractor" within the meaning of Civil Code §56.05(d), a "recipient" under Civil Code §56.13, or an administrator under Civil Code §56.26, and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

24

103.    Plaintiff and the Class are "patients" within the meaning of Civil Code § 56.05(k). Furthermore, Plaintiff and the Class, as patients of Defendants, or their contracting entity, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendants' server through their partner companies, on or before February 21, 2024.

104.    On or about April 10, 2024, Defendants determined that the illegally accessed files involved Plaintiff's and the Class members' individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[19] including Plaintiff's and the Class members' "first name, last name, address, date of birth, health diagnosis, and/or medications and prescriptions."

105.    Defendants were made aware of an unusual activity involving certain of their electronic files. Defendants immediately commenced an investigation to quickly assess the security of their systems. Through the investigation, Defendant determined that certain files were accessed and acquired on or about February 21, 2024 without authorization. During their investigation, Defendants determined that the information of certain individuals were present in the relevant files.

106.    As a result of Defendants' above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

107.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff, individually and on behalf of the Class, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1); and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

//

//

---

[19] Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment. 'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiff's and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

Class Action Complaint

**SECOND CAUSE OF ACTION**
**(Violations of the CCPA, Cal. Civ. Code § 1798.150)**
(Against All Defendants)

108.   Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

109.   Plaintiff and the Class members hereby seek relief under § 1798.150(a), including, but not limited to, (i) recovery of actual damages or damages in an amount not less than $100 and not greater than $750 per consumer per incident, whichever is greater, (ii) injunctive or declaratory relief, and (iii) any other relief the Court deems proper, including attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

110.   Plaintiff and Class members also seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguards customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold customers' PII, including Plaintiff's and Class members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

111.   Defendant is a company organized or operated for the profit or financial benefit of its owners with annual gross revenues over $276.5 billion. Defendants collected consumers' PII as defined in Cal. Civ. Code § 1798.140.

112.   Defendants violated § 1798.150 of the CCPA by failing to prevent Plaintiff's and Class members' nonencrypted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violations of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

113.   Defendants collect consumers' personal information as defined in Cal. Civ. Code § 1798.140. Defendants have a duty to implement and maintain reasonable security procedures and practices to protect this personal information. As identified herein, Defendants failed to do so. As a direct and proximate result of Defendants' acts, Plaintiff's and Class members' personal information, including unencrypted names and birth dates, among other information, was subjected to unauthorized access and exfiltration, theft, or disclosure.

114.   Plaintiff has served Defendant with a notice and opportunity to cure pursuant to Cal. Civ. Code §1798.150 by certified mail upon filing of this complaint.

26

115. Defendant has not responded to Plaintiff's Cal. Civ. Code §1798.150 letter. Specifically, Defendant failed to (i) provide an express written statement that the violations have been cured and that no further violations shall occur as required by § 1798.150; or (ii) "actually cure" its violation of Cal. Civ. Code §1798.150(a) within thirty days of Plaintiff's written notice of Defendants' violation of §1798.150(a). 84. Based on the foregoing, Plaintiff's claim for statutory damages under the CCPA is therefore proper.

**THIRD CAUSE OF ACTION**
**(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)**
(Against All Defendants)

116. Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

117. Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.

118. Defendants engaged in unlawful acts and practices by maintaining sub-standard security practices and procedures as described herein, by soliciting, collecting, and profiting from Plaintiff's and Class members' PII knowing that it would not be adequately protected, and by storing Plaintiff's and Class members' PII in an unsecure electronic environment in violation of California's data breach statute, the CMIA and Cal. Civ. Code § 1798.81.5, which require Defendants to implement and maintain reasonable security procedures and practices to safeguard the PII of Plaintiff and the Class.

119. In addition, Defendants engaged in unlawful acts and practices by failing to disclose the Data Breach to the Plaintiff and the Class in a timely and accurate manner contrary to the duties imposed by Cal. Civ. Code §1798.82.

120. As alleged herein, Defendants engaged in negligence, among other unfair acts and practices. Plaintiff and Class members were directly and proximately harmed in several ways as a result of Defendants' unlawful and/or unfair conduct and are entitled to all available injunctive relief, including but not limited to an order mandating Defendants to (i) implement reasonable security measures to protect its customers' PII and (ii) provide prolonged free credit monitoring to customers affected by the Data Breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendants:

a.     An order certifying this action as a class action under Code of Civil Procedure §382, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.     A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CMIA, CCPA, and UCL, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.     An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

i.     Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii.     Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii.     Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

iv.     Ordering that Defendants' segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.     Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

28

1     vi. Ordering that Defendants conduct regular database scanning and securing

2       checks;

3     vii. Ordering that Defendants routinely and continually conduct internal training

4       and education to inform internal security personnel how to identify and

5       contain a breach when it occurs and what to do in response to a breach; and

6     viii. Ordering Defendants to meaningfully educate their current, former, and

7       prospective employees and subcontractors about the threats they face as a

8       result of the loss of their financial and personal information to third parties,

9       as well as the steps they must take to protect themselves.;

10  d. An order requiring Defendants to pay the costs involved in notifying the Class

11 members about the judgment and administering the claims process;

12  e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-

13 judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, including the

14 CCPA, Cal. Civ. Code § 1798.150 and CMIA, Cal. Civ. Code 56.35; and

15  f. An award of such other and further relief as this Court may deem just and proper.

16

17           **POTTER HANDY LLP**

18           /s/ James M. Treglio

19 Dated: June 7, 2024    By: _____

20          Mark D. Potter, Esq.
           James M. Treglio, Esq.

21 //         Attorneys for the Plaintiff and the Class

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with

3  respect to which they have a right to jury trial.

4

5

6

7                                  **POTTER HANDY LLP**

8  Dated: June 6, 2024                     By: _____
                                                  /s/ James M. Treglio

9                                              Mark D. Potter, Esq.
                                               James M. Treglio, Esq.
10                                          Attorneys for the Plaintiff and the Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint

Electronically FILED by Superior Court of California, County of Riverside on 06/06/2024 10:51 PM
Case Number CVRI2403162 0000095406559 - Jason B. Galkin, Executive Officer/Clerk of the Court By Brian Votruba, Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| James M. Treglio (SBN 228077)<br>Potter Handy, LLP<br>100 Pine St., Ste 1250, San Francisco, CA 94111<br>TELEPHONE NO.: (415) 534-1911　FAX NO.　:　888-422-5191<br>EMAIL ADDRESS: jiml@potterhandy.com<br>ATTORNEY FOR *(Name):* Plaintiff, Margie Lopez | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   RIVERSIDE
STREET ADDRESS:　4050 Main Street,
MAILING ADDRESS:
CITY AND ZIP CODE:　Riverside, CA 92501
BRANCH NAME:　Riverside Historic Courthouse

CASE NAME:　Lopez v. Cencora, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>CVRI2403162 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [x] is　[ ] is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [ ] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision
3.  Remedies sought *(check all that apply):* a. [x] monetary　b. [x] nonmonetary; declaratory or injunctive relief　c. [ ] punitive
4.  Number of causes of action *(specify):* 3 - CMIA, CCPA, UCL
5.  This case [x] is　[ ] is not　a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  June 6, 2024

James M. Treglio　　　　　　　▶　　/s/ James M. Treglio
(TYPE OR PRINT NAME)　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
* Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
* File this cover sheet in addition to any cover sheet required by local court rule.
* If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
* Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.　　　Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner
    Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
  relations)*
Sister State Judgment
Administrative Agency Award
  *(not unpaid taxes)*
Petition/Certification of Entry of
  Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

Electronically FILED by Superior Court of California, County of Riverside on 06/06/2024 10:51 PM
Case Number CVRI2403162 0000095406560 - Jason B. Galkin, Executive Officer/Clerk of the Court by Brian Votruba, Clerk

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

| | |
|---|---|
| ☐ **BANNING** 311 E. Ramsey St., Banning, CA 92220 | ☐ **MURRIETA** 30755-D Auld Rd., Suite 1226, Murrieta, CA 92563 |
| ☐ **BLYTHE** 265 N. Broadway, Blythe, CA 92225 | ☐ **PALM SPRINGS** 3255 E. Tahquitz Canyon Way, Palm Springs, CA 92262 |
| ☐ **CORONA** 505 S. Buena Vista, Rm. 201, Corona, CA 92882 | ☒ **RIVERSIDE** 4050 Main St., Riverside, CA 92501 |
| ☐ **HEMET** 880 N. State St., Hemet, CA 92543 | ☐ **TEMECULA** 41002 County Center Dr., #100, Temecula, CA 92591 |
| ☐ **MORENO VALLEY** 13800 Heacock St., Ste. D201, Moreno Valley, CA 92553 | |

RI-CI032

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar Number and Address)*
James M. Treglio (SBN 228077), Potter Handy LLP
100 Pine St., Ste 1250 San Francisco, CA 94111

TELEPHONE NO: (415) 534-1911      FAX NO. *(Optional)*:   888-422-5191
E-MAIL ADDRESS *(Optional)*: jimt@potterhandy.com
ATTORNEY FOR *(Name)*: Plaintiff, Margie Lopez

*FOR COURT USE ONLY*

PLAINTIFF/PETITIONER: Margie Lopez

DEFENDANT/RESPONDENT: Cencora, Inc., et. al.

CASE NUMBER:
CVRI2403162

## CERTIFICATE OF COUNSEL

The undersigned certifies that this matter should be tried or heard in the court identified above for the reasons specified below:

☒   The action arose in the zip code of:   92253-3326

☐   The action concerns real property located in the zip code of:   _____

☐   The Defendant resides in the zip code of:   _____

For more information on where actions should be filed in the Riverside County Superior Courts, please refer to Local Rule 1.0015 at www.riverside.courts.ca.gov.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date   June 6, 2024

_____

James Treglio                                    ▶        /s/ James Treglio
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLARATION)                (SIGNATURE)

Page 1 of 1

Approved for Mandatory Use
Riverside Superior Court
RI-CI032 [Rev. 08/15/13]
(Reformatted 01/07/19)

**CERTIFICATE OF COUNSEL**

Local Rule 1.0015
riverside.courts.ca.gov/localrules/localrules.shtml

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501
www.riverside.courts.ca.gov

**Case Number:**    CVRI2403162

**Case Name:**    LOPEZ vs CENCORA, INC.

## NOTICE OF DEPARTMENT ASSIGNMENT

The above entitled case is assigned to the Honorable Harold W. Hopp in Department 1  for All Purposes.

Any disqualification pursuant to CCP section 170.6 shall be filed in accordance with that section.

The court follows California Rules of Court, Rule 3.1308(a)(1) for tentative rulings (see Riverside Superior Court Local Rule 3316).  Tentative Rulings for each law and motion matter are posted on the internet by 3:00 p.m. on the court day immediately before the hearing at http://riverside.courts.ca.gov/tentativerulings.shtml.  If you do not have internet access, you may obtain the tentative ruling by telephone at (760) 904-5722.

To request oral argument, you must (1) notify the judicial secretary at (760) 904-5722 and (2) inform all other parties, no later than 4:30 p.m. the court day before the hearing.  If no request for oral argument is made by 4:30 p.m., the tentative ruling will become the final ruling on the matter effective the date of the hearing.

The filing party shall serve a copy of this notice on all parties.

| | |
|---|---|
|  | Interpreter services are available upon request.  If you need an interpreter, please complete and submit the online Interpreter Request Form (https://riverside.courts.ca.gov/Divisions/InterpreterInfo/ri-in007.pdf) or contact the clerk's office and verbally request an interpreter. All requests must be made in advance with as much notice as possible, and prior to the hearing date in order to secure an interpreter. |
|  | Assistive listening systems, computer-assisted real time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided.  Contact the Office of the ADA Coordinator by calling (951) 777-3023 or TDD (951) 777-3769 between 8:00 am and 4:30 pm or by emailing ADA@riverside.courts.ca.gov to request an accommodation.  A *Request for Accommodations by Persons With Disabilities and Order* (form MC-410) must be submitted when requesting an accommodation.  (Civil Code section 54.8.) |

Dated: 06/11/2024

JASON B. GALKIN,
Court Executive Officer/Clerk of the Court

by:   _____
    B. Votruba, Deputy Clerk

CI-NODACV
(Rev. 02/16/21)